[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This was originally a contested action for dissolution of marriage, custody, and other relief brought to the Judicial District of Danbury. The case was transferred to the Regional Trial Family Docket in Middletown. The parties entered into a stipulation for judgment which was approved by the court in Middletown, on June 25, 1996, dissolving the marriage. The stipulation also provided, in part, as follows:
 2. The plaintiff and defendant shall have joint legal custody of the minor child Jessica, and shall have shared physical custody of Jessica as follows
 7. No financial orders shall enter today. The financial issues shall be referred to Danbury Superior Court for trial. The parties acknowledge that discovery on both sides has not been completed. The pendente lite orders regarding child support, insurance, etc. shall continue until further order of the court.
After the court dissolved the marriage and approved of the stipulation between the parties, the case was referred back to the Danbury Superior Court for trial regarding the entry of financial orders involving support, alimony, property, and attorney's fees.
Many of the facts involving this matter are not in dispute. The plaintiff and the defendant, whose maiden name is Nicolle P. Scholefield, were married in Jamaica on January 17, 1991. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child, issue of the marriage, Jessica Christine Diaz, born September 14, 1991. No other minor children have been born to the defendant wife since the date of the marriage of the parties. Neither party has received state assistance.
The court finds the following additional facts.
When the parties married, the plaintiff owned a home located 72 Cedar Drive, Danbury, Connecticut. The parties occupied that residence after they married. The defendant vacated the residence with the minor on July 3, 1994 when the dissolution of action proceeding commenced. CT Page 4403
None of the down payment for the plaintiff's home came from the defendant's earnings.
The home owned by the plaintiff was purchased in November of 1988. The plaintiff had received approximately $108,000 from the City of Danbury arising out of his workers' compensation claim. Part of the funds went towards legal fees, part of it went to his former wife, and part of it went towards the down payment on the home that he now owns.
The plaintiff's gross weekly current income as an attorney is approximately $250. He has net weekly income from his law practice of $56. He also has a pension from the City of Danbury totalling $626 weekly. His costs for Connecticut Blue Cross is $44 weekly, and his cost for Blue Shield is $24 weekly, for total deductions of $68, and a net weekly income from his pension of $558 which, when added to his net weekly income from his law practice, results in a total net weekly income of $614. Most of his law practice income comes from work done for the State of Connecticut at Juvenile Court. He also does some divorce and criminal actions. He was suspended from the practice of law for approximately a year and a half after the parties married. He had surgery which resulted in his being out of the practice of law for approximately three months.
The plaintiff has health insurance that covers both himself and the minor child. One of his weekly expenses is for child tuition for tuition that totals $225 monthly for his son Ricky Diaz. The plaintiff has liabilities, as shown on his financial affidavit, totalling $79,810. His home at 72 Cedar Drive has a fair market value of $155,000, a mortgage of $113,500, with equity of $41,500. He owns a 1996 BMW with a total value of $36,000, a loan balance of $26,000, and equity of $7000. The plaintiff's financial affidavit shows a liability of $10,000. That is a loan from his mother that was used towards purchasing his BMW. He has household furnishings with a total value of $7500. He has a life insurance policy in the face amount of $100,000, and a cash surrender value of $3000.
The plaintiff is an attorney at law. In the calendar year 1995, he had gross income of $15,778 and a net loss from his practice of $1450.
The defendant's financial affidavit shows weekly expenses for CT Page 4404 utilities. She pays utilities where she resides with her boyfriend. She also pays the telephone bill.
The defendant has liabilities totalling $10,300, as itemized on her financial affidavit, dated December 19, 1996, plus an additional approximate $20,000 for attorney's fees. She owns a motor vehicle with a value of $21,000 and a loan balance of $21,000 and no equity. She has bank accounts totalling $615. She has miscellaneous tangible property in her possession as well as the ownership of Hair Expressed.
She owes a balance of approximately $20,000 to her attorney for legal fees incurred in this matter. She also owes fees to counsel for the minor child.
She has a liability to her sister, M. Groetzinger, of $2500 for funds that she borrowed in July of 1994. She also borrowed $2500 from Paul Groetzinger. That liability has since been paid. Her financial affidavit shows a debt to ADDANTA. That is a credit card debt. She has a liability to Shell Mastercard in the amount of $3100. That was used to purchase furniture. All of her various credit cards have also been used to purchase gas, furniture, as well as business items. She purchased furniture after the parties separated in 1994.
The principal business or profession of the defendant is that of hair cutting and styling under the name Hair Expressed. In the calendar year income of $9946. In the calendar year 1995, she had a gross income of $17,195 and a net income of $2549.
The defendant is a licensed hair stylist. She is also experienced as a waitress/bartender. The plaintiff was not employed between the date of marriage of the parties on January 17, 1991, and birth of the minor child on September 14, 1991.
The defendant, on her financial affidavit, shows her net weekly income from her business as $48.75. She does not know what her gross weekly income is and does not know how she arrived at that weekly sum. At her deposition of December 3, 1996, she testified that she earns around $800 monthly in tips alone.
In November of 1993, the defendant and the plaintiff discussed the opening of a beauty shop for the defendant. That beauty shop, known as Hair Expressed, was open in 1993. The defendant initially had a partner. That partner is not there CT Page 4405 today. On November 24, 1993, the defendant and her partner executed a promissory note payable to the order of the plaintiff in the face amount of $16,000 upon demand. On November 27, 1993, the defendant and her partner also executed a payment guarantee to the plaintiff for $16,000.
The promissory note and guarantee signed by the defendant and her partner were executed at about the time her business started. The checks from the plaintiff for the money in question was drawn against a joint checking account of the plaintiff and the defendant. Part of the money represented by the promissory note and guarantee was put into the business through checks, and part of it was put into the business through cash.
The defendant owns various equipment at her beauty parlor including two chairs, a sink, a desk and supplies. She does not know the cost or fair market value of most of the items. Two chairs have a fair market value of approximately $200 per chair.
The $16,000 promissory note and guarantee represents approximately $5600 to $6600 paid for counters and sinks, approximately $4000 paid to install floors, one month's rent, as well as expenses for walls, electrical work and plumbing work. No part of the $16,000 has been repaid. The $16,000 was part of approximately $32,000 or $33,000 that the plaintiff received from the sale of a home that he had owned with his first wife.
The defendant has been residing with a male companion in his home since June of 1996. He helps her financially. He has put some money into her business. In November of 1996, she took a vacation with him to St. Croix. He paid the full cost of the vacation. The minor child did not go with them. He has also paid for a one week vacation for the two of them to Jamaica, as well as a one week vacation to Rhode Island.
The parties separated on July 3, 1994, following a social function that they attended in New Haven. The parties are in dispute as to what occurred at that social function. The court finds that the plaintiff was physically abusive to the defendant at that social function. The plaintiff had not been physically violent to the defendant prior to that occasion.
The plaintiff has a girlfriend who lives with him approximately five days a week since approximately September of 1996. CT Page 4406
From all the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The parties purchased new furniture for the plaintiff's home.
Since the time the parties separated, the plaintiff has sold a sewing machine, sofa and rocking chairs, as well as some other items.
The defendant is thirty years old. She is in good health.
The plaintiff is forty-six years old. He has three children from a prior marriage, the youngest of whom, Ricky, is adopted. Ricky turns eighteen in July of 1997. The plaintiff is financially responsible for Ricky. Ricky has emotional problems. He is attending a special school, and the room and board charge balance through July of 1997 due for that school is $7000. The plaintiff also pays for Ricky's uncovered medical expenses.
The plaintiff has suffered from asthma since childhood. He is retired from the Danbury Police Department and receives a gross weekly disability pension of $626.
The plaintiff has a heart condition for which he is being treated.
The plaintiff has paid $1250 of the fee for counsel of the minor child. The defendant's share of the balance of the fee due to counsel for the minor is $3465, and the plaintiff's share is $2737.50.
This court has considered the provision of § 46b-84 and the Child Support Guidelines in considering the issue of child support, and has considered the provision of § 46b-81 (c) regarding the issues of property, and has considered the provision of § 46b-62 regarding the issue of attorney's fees, and has considered the provisions of § 46b-82 regarding the issue of alimony.
The court enters the following orders:
A. BY WAY OF SUPPORT
1. The plaintiff is to pay to the defendant, as support, the CT Page 4407 sum of $100 per week. The amount of support which the plaintiff should pay under the guidelines is $154 per week. The court finds that the guidelines are inappropriate and inequitable based on the fact that the parties have shared custody in accordance with guideline deviation (b)(6)(A) shared custody arrangement. The court finds that the presumption that the guidelines are the correct amount has been rebutted in this case.
2. The plaintiff is to maintain life insurance in the amount of $50,000 on his life, naming the minor child as beneficiary until the minor child is eighteen years of age. Said $50,000 is to be unencumbered. He is to annually provide to the defendant, commencing one year from the date this decision is filed, and annually thereafter, with written evidence that such life insurance policy is in full force and effect and unencumbered.
3. The plaintiff is to maintain health insurance for the benefit of the minor child. The parties have to divide equally any uncovered or unreimbursed health expenses.
4. The parties are to exchange copies of federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt, or registered mail, return receipt, for so long as there is an outstanding support order.
5. The plaintiff shall have the right to claim the minor child as a tax exemption for state and federal state income tax purposes for each calendar year in which he is current in his support obligation and life insurance obligation.
B. BY WAY OF PROPERTY ORDERS
1. The defendant is to pay all liabilities shown on her financial affidavit of December 19, 1996. and hold the plaintiff harmless therefrom.
2. The plaintiff is to pay all liabilities shown on his financial affidavit, dated December 19, 1996, and hold the defendant harmless therefrom.
3. A liability owed to the City of Danbury for motor vehicle taxes shown on defendant's Exhibit 5, is to be paid by the defendant by June 30, 1997. CT Page 4408
4. The $16,000 promissory note and guarantee to the plaintiff from the defendant are discharged in full as a result of all of the orders entered herein. The plaintiff is to hold the defendant harmless from any claims arising out of said promissory note and guarantee. He is to turn over to her, within thirty days from today's date, the original of the promissory note and guarantee.
5. All assets shown on the plaintiff's financial affidavit are awarded to the plaintiff, except for the $16,000 note and guarantee.
6. All assets shown on the defendant's affidavit are awarded to the defendant.
7. The defendant is awarded the following items of tangible personal property: (a) video camera; (b) Minolta camera; (c) sofa; (d) oak table and lamp; (e) jacuzzi; and (f) rocking chair.
The above items may be removed by the defendant from the plaintiff's residence commencing thirty days after this decision is filed, and are to be removed within sixty days after this decision is filed.
C. BY WAY ALIMONY
1. No alimony is awarded in favor of either party.
D. ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of the plaintiff or the defendant.
2. The plaintiff is to pay counsel for the minor child the sum of $2737.50, and the defendant is to pay counsel for the minor child the sum of $3465. Each party is to pay $100 monthly to counsel for the minor child until the sum ordered for each party to be paid has been paid in full commencing thirty days after the date this decision is filed and monthly thereafter.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to the counsel for the defendant for signature and filing. CT Page 4409
Axelrod, J.